IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 13 |
| STEVEN RICHARD ALECKNA : | |
| JAIME SUE ALECKNA : | |
| : | CASE NO. 5-12-bk-03367 RNO |
| Debtors : | |
| _____: | _____ |
| : | |
| CALIFORNIA COAST UNIVERSITY, : | |
| : | |
| Plaintiff and : | |
| Counterclaim Defendant : | |
| : | |
| v. : | |
| : | |
| JAIME SUE ALECKNA : | |
| : | |
| Defendant and : | |
| Counterclaim Plaintiff : | ADVERSARY NO. 5-12-ap-00247 RNO |

# **OPINION**[1]

In this Adversary Proceeding, the only outstanding claim is the Debtor's counterclaim alleging that the Plaintiff/creditor, a university, violated the automatic stay when it did not release her graduation transcripts. For the reasons stated herein, I find that the automatic stay was violated and will award appropriate damages to the Debtor.

**I.      Jurisdiction**

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (O).

---

[1] Drafted with the assistance of William J. Schumacher, Esquire, Law Clerk.

As discussed below, the Debtor's counterclaim against the subject creditor is grounded on 11 U.S.C. § 362(k).[2] A proceeding concerning a violation of the automatic stay is a core proceeding. *In re D'Alfonso*, 211 B.R. 508, 512 (Bankr. E.D.Pa. 1997). A claim arising from an alleged willful violation of § 362(k) is within the exclusive jurisdiction of the Bankruptcy Court. *In re Roman-Perez*, 527 B.R. 844, 852 (Bankr. D.P.R. 2015).

**II.     Facts and Procedural History**

I offer a truncated procedural history in this matter. Jaime Sue Aleckna ("Aleckna") and Steven Richard Aleckna filed a voluntary Chapter 13 bankruptcy petition on June 1, 2012. The scheduled creditors include California Coast University ("Coast") with a disputed claim in the amount of $6,300.00. On September 4, 2012, Coast filed a Complaint against Aleckna commencing this Adversary Proceeding. The initial pleadings requested that Coast's claim against Aleckna be determined to be a non-dischargeable educational loan or benefit pursuant to § 523(a)(8).

Aleckna raised defenses to Coast's claim and also filed a Counterclaim pursuant to Federal Rule of Bankruptcy Procedure 7013, alleging violations of the automatic stay and the entitlement to an award of damages. Both the original Complaint and original Counterclaim were subsequently amended. Coast then sought to dismiss the Adversary Proceeding which it had originated. It later moved to dismiss the Counterclaim, alleging the failure to state a claim upon which relief can be granted. The Motion to Dismiss was denied by *In re Aleckna*, 494 B.R. 647 (Bankr. M.D.Pa. 2013). On April 10, 2014, Aleckna was granted leave to file an amended

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

2

Answer and Counterclaim. The Amended Counterclaim was filed and responded to. On September 5, 2013, Coast's Amended Complaint was dismissed with prejudice. The dismissal Order stated that Aleckna's Counterclaim remained pending and subject to adjudication by the Court.

Thereafter, Coast moved for summary judgment on the Amended Counterclaim against it. The Motion for Summary Judgment was denied by *In re Aleckna*, 2014 WL 4100702 (Bankr. M.D.Pa., Aug. 19, 2014).

The Amended Counterclaim proceeded to trial on October 9, 2015. Post trial briefing has been completed and the matter is ripe for decision.

### III. Discussion

#### A. Alleged Automatic Stay Violation

One of the fundamental protections provided to debtors under the Bankruptcy Code is the automatic stay. Under § 362(a)(6), "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" is stayed by the filing of the petition. When a creditor violates the automatic stay, § 362(k) provides a cause of action for an award of damages to an individual injured by a "willful violation of a stay." 11 U.S.C. § 362(k)(1).

An automatic stay violation is "willful" when the debtor shows:

(1)  a violation of the stay occurred;

(2)  the creditor had knowledge of the bankruptcy case when acting; and,

(3)  the violation caused actual damages.

*Linsenbach v. Wells Fargo Bank (In re Linsenbach)*, 482 B.R. 522, 526 (Bankr. M.D.Pa. 2012); *Wingard v. Altoona Reg'l Health Sys. (In re Wingard)*, 382 B.R. 892, 900 (Bankr. W.D.Pa.

3

2008). A debtor must prove the required elements by a preponderance of the evidence. *Wingard*, 382 B.R. at 900, n.6 (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Essentially, Aleckna alleges that she began a course of study at Coast in 2008. She was pursuing a Bachelor of Science in Psychology. She testified that she completed the required course work in 2009. Trial Tr. 126-28.

Aleckna's uncontradicted testimony is that before filing for bankruptcy, she made telephone requests for transcripts from Coast. She testified that she was advised that no transcripts would be released because there was a "financial hold" on her account with Coast.

The crux of the first stay violation alleged in the Amended Counterclaim is that, after the Chapter 13 petition was filed on June 1, 2012, Coast continued to refuse to release transcripts to Aleckna. The second basis for the alleged stay violation is that when Coast did release a transcript to Aleckna, it failed to show that she had graduated, notwithstanding the fact that she had completed all the course requirements for the B.S. in Psychology.

**B.    Is Failure to Issue a Transcript a Violation of the Automatic Stay?**

Aleckna testified that after the bankruptcy filing, she telephoned Coast and again requested transcripts. At that time, she advised Coast that she had filed bankruptcy. She testified that an unidentified woman told her that her transcripts could not be released because of the financial hold. Trial Tr. 129-30. Coast presented three witnesses at trial: Shelly Marquardt - Executive Vice President; Angela Cenina - Registrar; and, Sonya Martinez - Accounting Coordinator. After a review of the record, I find that these employees had no training concerning how to handle communications from students who had filed for bankruptcy

4

protection. I also find that the Coast employees did not know how to search to confirm a bankruptcy filing, either on PACER or by other means.

There is no real contest that Coast did not promptly release any transcripts to Aleckna after she advised them by telephone of her bankruptcy filing. This joins the issue of whether the refusal to release a student/debtor's transcript is a violation of the automatic stay imposed by § 362(a).

Bankruptcy Judge Frank considered a university's failure to release a transcript in the case of *In re Mu'min*, 374 B.R. 149 (Bankr. E.D.Pa. 2007). The stipulated facts in *Mu'min* are quite similar to the case at bar. The debtor in that case owed a sum in excess of $33,000.00 to the university and it was stipulated that her transcript was placed on "official hold" after she stopped making payments on her loan obligation. *Mu'min*, 374 B.R. at 153. After a second Chapter 13 bankruptcy filing, the debtor in *Mu'min* requested a certified copy of her transcript so that she could apply to a master's program in Clinical Psychology. *Id.* Further, the debtor's counsel corresponded with the university's attorney in an attempt to obtain transcripts. The university refused to release the transcripts citing its policy to put a transcript hold on delinquent accounts.

In *Mu'min*, Judge Frank noted the breadth of the automatic stay contained in § 362(a)(6). Judge Frank's opinion includes:

> The majority view, occasionally with some qualification, is that a university's refusal to release a debtor's transcript due to the existence of a default on an nondischargeable student loan owed to the university violates 11 U.S.C. § 362(a)(6).

*Id.* at 155. The *Mu'min* decision includes a learned discussion of two bankruptcy decisions in the Third Circuit which deviated from the majority view and found that refusal to release a

5

transcript due to an unpaid, nondischargeable student loan is not a violation of the automatic stay. *See In re Billingsley*, 276 B.R. 48 (Bankr. D.N.J. 2002) and *In re Najafi*, 154 B.R. 185 (Bankr. E.D.Pa. 1993). Judge Frank concluded that those cases were inapposite in that they were largely based upon the Third Circuit's decision of *Johnson v. Edinboro State College*, 728 F.2d 163 (3d Cir. 1984). Judge Frank's analysis explains that *Johnson* was decided under § 525, the so called anti-discrimination provisions of the Bankruptcy Code, and not under the automatic stay provisions contained in § 362(a) and (k). I concur in and adopt Judge Frank's excellent analysis, including the distinguishability of *Billingsley* and *Najafi*.³

I also join Judge Frank, and other courts, in concluding that a university's refusal to provide a transcript based upon a financial hold is an action designed to collect the unpaid debt. *Mu'min*, 374 B.R. at 160; *In re Merchant*, 958 F.2d 738, 741 (6th Cir. 1992) (internal citations omitted) ("We follow the reasoning of these decisions and hold a violation of 11 U.S.C. § 362(a) arises when a prepetition creditor withholds a student-debtor's transcript"); *In re Parker*, 334 B.R. 529, 536 (Bankr. D.Mass. 2005) (not allowing a student/debtor to register for a class was done to compel payment of the debt); *In re Hernandez*, 2005 WL 1000059 at *1 (Bankr. S.D.Tex. Apr 27, 2005).

I readily infer that Coast's requiring Aleckna to meet her financial obligations, as a precondition to the release of her transcript, demonstrates an underlying purpose to collect on its prepetition claim. Many other courts have reached a similar conclusion. *In re Scroggins*, 209

---

³ Section 525 largely prohibits governmental units from discriminating in the issuance of licenses or considering the employment of persons who have filed for bankruptcy. This section also has limited provisions concerning private employers' decisions based upon the current or prospective employee's bankruptcy filing. *In re Valentin*, 309 B.R. 715, 720 (Bankr. E.D.Pa. 2004) ("section 525 helps to ensure the 'fresh start' policy of the Bankruptcy Code by prohibiting governmental entities from refusing to deal with or denying a certain property interest to a debtor due to his or her bankruptcy filing").

6

B.R. 727, 730 (Bankr. D.Ariz. 1997); *In re Lanford*, 10 B.R. 132, 134 (Bankr. D.Minn. 1981); *In re Ware*, 9 B.R. 24, 25 (Bankr. W.D. Mo. 1981).

At trial, Aleckna admitted into evidence a letter from her to Coast dated July 10, 2012. The letter includes the following:

> Enclosed is a money order in the amount of $30.00. This money order is payment in full for 3 certified transcripts. I understand that I have an unpaid balance on an account that is owed to your institution that normally would have to be paid in full before my transcripts are released. However, my bankruptcy lawyer has advised me that due to my pending bankruptcy case, I am no longer required to satisfy that open account to obtain my transcript. Instead, you are required to release my transcripts upon the payment of the customary fee that you charge for such transcripts. My bankruptcy case was file [sic] on June 1, 2012 in the United States Bankruptcy Court for the Middle District of Pennsylvania at docket 5:12-bk-02267-RNO [sic].
>
> If I have miscalculated the fee that you charge for the number of transcripts that I have ordered, then please instead send me the number of transcripts that I am able to purchase for the amount of money that I have tendered, and advise me as to the amount of the miscalculation.

Trial Tr. 14-15, Exhibit Aleckna 2. Coast's July 18, 2012, email reply to the July 10, letter was also admitted into evidence. The email includes, "[t]he accounting office of California Coast University, as of today has never received any bankruptcy paperwork from the courts on your behalf." The email includes a request that the Bankruptcy Court "send a copy of your discharge papers . . . ." Trial Tr. 17, Exhibit Aleckna 3. Such a reply is disappointing to the Court in that Coast could have easily confirmed whether or not Aleckna had, in fact, filed bankruptcy by utilizing the case number information contained in the July 10, 2012, letter and telephoning the Bankruptcy Court, or contacting legal counsel to confirm the filing.

7

I conclude that the first required element to sustain a § 362(k) claim – a violation of the automatic stay – has been established.

### C. When Did Coast Have Knowledge of the Bankruptcy Filing?

A portion of Coast's defense to the stay violation alleged in the Amended Counterclaim is that it did not have timely notice of the Chapter 13 filing. For the reasons stated below, I find this defense unavailing.

Pursuant to Federal Rule of Evidence 201, a bankruptcy judge may take judicial notice of his or her own docket. *Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 742, n.8 (Bankr. E.D.Pa. 1996). It should be noted that the truth of the contents of the records is not inferred by simply taking judicial notice of the record itself. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008).

I take judicial notice of the docket entries in the Adversary Proceeding and in the underlying Chapter 13 bankruptcy which Aleckna filed with her husband, Steven Richard Aleckna. Docket Number 9 in the Chapter 13 case is a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines. The Certificate of Notice indicates that the Notice was mailed, by regular mail, on June 6, 2012, to "California Coast University, 925 N Spurgeon St, Santa Ana CA 92701-3700." I reiterate that an act is "willful" for purposes of a stay violation when a creditor had knowledge of the existence of the bankruptcy case. *Thomas v. City of Philadelphia (In re Thomas)*, 497 B.R. 188, 202 (Bankr. E.D.Pa. 2013).

Under the mailbox rule, proof of mailing raises a rebuttable presumption that the mailed item was received. *Carnathan v. Ohio Nat'l Life Ins. Co.*, 2008 WL 2578919 at *3 (M.D.Pa. June 26, 2008). Once mailing has been established, the party challenging the presumption of

receipt must present credible evidence demonstrating that the mailing was not, in fact, received. *Pondexter v. Allegheny Cnty. Hous. Auth.*, 2012 WL 3611225 at *7 (W.D.Pa. Aug 21, 2012); *also see Cub Cadet Corp., Inc. v. Rosage (In re Rosage)*, 189 B.R. 73, 79 (Bankr. W.D.Pa. 1995) ("[t]he presumption is rebuttable only by a showing that in reality the mailing was not accomplished."). I recently discussed many of the factors – both legal and factual – which a court should consider when a party seeks to overcome the presumption of delivery. *See In re Lienhard*, 498 B.R. 443, 451-52 (Bankr. M.D.Pa. 2013).

Here, several of Coast's witnesses suggested that Coast had not received Aleckna's 341 Meeting Notice. Each of these witnesses testified that a receptionist, named Barbara, opened the mail received by Coast. Barbara did not appear and testify at trial. One of Coast's witnesses, Angela Cenina, the Registrar, testified that generally Barbara would take incoming mail and put it in boxes behind her desk for the right department. Trial Tr. 191. Ms. Cenina also testified that she could not describe the policy for handling incoming mail, indicating "I'm not sure of her - - the policy that she was told. I see her read through them, and then decide where they would go, but - -." Trial Tr. 192. Ms. Cenina also testified that she was not aware of any log to note the receipt of each piece of mail received by Coast. Trial Tr. 194.

Coast also called Sonya Martinez, Accounting Coordinator, as a witness concerning the alleged non-receipt of the 341 Meeting Notice. On direct, she testified that no "bankruptcy notices" were in Aleckna's file. However, on cross examination, she admitted that she only reviewed the computer file for Ms. Aleckna and that she had never seen a scanned image of a paper bankruptcy notice in a Coast computer file. Trial Tr. 197-98.

9

I find the record here to be readily distinguishable from the record presented in *In re Lienhard*, *supra*. In that case, there was evidence that the bankruptcy notice was addressed to "Lehighton Ambulance" when the defendant's actual name was "Lehighton Ambulance Association." More significantly, the last four digits of the defendant, Lehighton's, zip code were incorrect. Further, in *Lienhard*, three employees who handled the mail for the ambulance company all appeared and testified. They explained in detail the procedures for handling incoming mail.

In the case at bar, there is no suggestion that Coast was incorrectly named nor that there was any error in the address. Further, it is well settled that mere denial of receipt does not rebut the presumption of delivery under the mailbox rule. *In re Hobbs*, 141 B.R. 466, 468 (Bankr. N.D.Ga. 1992).

I find that Coast has failed to overcome the presumption of delivery of the 341 Meeting Notice pursuant to the mailbox rule. There was insufficient evidence of any protocol for handling incoming mail to rebut the presumption of delivery.

I will allow three days for mail delivery and, therefore, conclude that Coast had notice of Aleckna's Chapter 13 bankruptcy filing on and after June 9, 2012. This satisfies the second required element to prove a stay violation claim, namely, Coast had knowledge of Aleckna's bankruptcy case when it acted.

### D. Is the Issuance of a Transcript Without a Graduation Date a Violation of the Automatic Stay?

The record reveals that Coast ultimately did send a "Transcript of Academic Records" dated July 27, 2012, to Aleckna. A copy of this two page document, Aleckna Exhibit 5, was admitted into evidence. Trial Tr. 43. The upper right hand corner of page 2 of the transcript

10

Case 5:12-ap-00247-JJT    Doc 152    Filed 01/14/16    Entered 01/14/16 09:14:52    Desc
Main Document    Page 10 of 16

includes "Date of Graduation: _____." This joins the issue of whether releasing a transcript, without a graduation date, to a debtor/student who has completed all of the academic requirements for graduation, because of an unpaid debt to the institution, constitutes a violation of the automatic stay.

At trial, Ms. Cenina, Coast's Registrar, acknowledged that Aleckna had completed all her course work. When asked why Aleckna was not processed for graduation, she replied, "[s]he had not met her financial obligations." Trial Tr. 43.

It has been held that the failure to allow a debtor student to register for one course and to graduate – due to non-payment – is a violation of the automatic stay. *In re Parker*, 334 B.R. 529, 536 (Bankr. D.Mass. 2005); *also see In re Moore*, 407 B.R. 855, 861 (Bankr. E.D.Va. 2009) (refusal to issue a transcript and diploma violates the discharge injunction imposed by § 524).

I conclude that there has been a continuing de facto refusal by Coast to allow Aleckna to graduate. Ms. Marquardt testified that as of the trial date, October 9, 2015, no decision had yet been made as to whether Aleckna would be allowed to graduate. Trial Tr. 74-75. However, the record is clear that the only transcripts released show no graduation date.

I view a final transcript, with no graduation date, as akin to a letter of reference with no signature. Neither item is useful to the student recipient. I conclude that Coast's continuing failure to issue transcripts, with a completed graduation date, violates the automatic stay imposed by § 362(a). My judgment, in part, will require Coast to provide Aleckna with certified transcripts, with a graduation date, and a diploma within twenty-one (21) days of the judgment.

### E. Actual Damages

Section 362(k) provides that an individual injured by a willful violation of the automatic

11

stay, ". . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

"Actual damages," as used in § 362(k), "are amounts awarded . . . to compensate for a proven injury or loss; damages that repay actual losses." *In re Dean*, 490 B.R. 662, 667-68 (Bankr. M.D.Pa. 2013) (internal citations omitted). Actual damages are awarded to compensate for actual and real loss or injury, as opposed to nominal or punitive damages. Actual damages must be supported by concrete evidence supporting the award in an amount that can be determined with reasonable certainty. *In re Dean*, 490 B.R. at 667-68. Actual damages include time lost from work due to the willful automatic stay violation. *In re Rosas*, 323 B.R. 893, 901 (Bankr. M.D.Pa. 2004) (decided under § 362(h)).

Aleckna testified that she is employed as a legal secretary and earns $28.77 per hour. She testified that she missed eight hours of work to attend the trial. I award Aleckna $230.16, as an item of actual damages.

Aleckna also testified that her general plan is to retire from her legal secretary position in three to twelve years. She testified she wanted to "slowly" pursue a Master's in Psychology. She also testified her goal is to work in psychological counseling after retiring from the legal secretary position. Trial Tr. 128-29.

No evidence was presented that Aleckna had applied to any master's program. Nor was any expert vocational or expert testimony offered to show any projected loss of future earnings due to the three and one half year delay in obtaining a B.S. from Coast. Sheer conjecture by the fact finder cannot be the basis for an award of damages. *Dixon v. Pennsylvania R. Co.*, 378 F.2d 392, 394 (3d Cir. 1967). Generally, damages must be established to a reasonable degree of

certainty. Speculative or conjectural damages are not recoverable. *In re Eastman*, 419 B.R. 711, 734 (Bankr. W.D.Tex. 2009) (decided with reference to Texas law). It is not for the Court to speculate as to possible losses and I cannot find an actual loss in this regard.

Reasonable and necessary attorneys' fees and costs are recoverable as actual damages by a debtor injured by a willful violation of the automatic stay. *In re Voll*, 512 B.R. 132, 140-41 (Bankr. N.D.N.Y. 2014); *In re Webb*, 2012 WL 2329051, at *16 (B.A.P. 6th Cir. Apr. 9, 2012); *In re Atlantic Medical Management Services, Inc.*, 387 B.R. 654, 663 (Bankr. E.D.Pa. 2008).

I find that an award of reasonable and necessary attorneys' fees and costs is justified here. The judgment will allow Aleckna fourteen days from the judgment date to file an itemized statement of attorneys' fees and costs incurred in seeking to obtain graduation transcripts and in this adversary proceeding.

### F.     Claim for Emotional Distress

Emotional distress claims, at least where not accompanied by physical manifestations, can present issues of proof to a court. I draw considerable guidance concerning emotional distress claims in automatic stay violation cases from a decision by Bankruptcy Judge Deller in the Western District of Pennsylvania. *In re Wingard*, 382 B.R. 892. After the Chapter 13 filing in *Wingard*, the creditor, a health system, and its collection agent sent two dunning letters and made at least one collection phone call to the debtors. The debtors in *Wingard* testified that they had trouble sleeping, stomach upset, and elevated blood pressure – the male debtor testified that his conditions worsened after the bankruptcy filing. Neither debtor in *Wingard* sought psychological or medical care for these complaints. Nor did they miss any time from work due to the defendant's collection actions, other than to attend bankruptcy court hearings. No

13

Case 5:12-ap-00247-JJT    Doc 152    Filed 01/14/16    Entered 01/14/16 09:14:52    Desc
Main Document    Page 13 of 16

corroborating witnesses were offered concerning the Wingards' claims for emotional distress. Judge Deller found that the analysis of emotional distress claims in stay violation cases differs depending upon the nature of the stay violation.

*Wingard* holds that when the stay violation is patent or egregious, credible debtor testimony alone may suffice without extrinsic or corroborating evidence. *Wingard* cites examples of egregious stay violations such as where a creditor broke into a debtor's home and "threatened to blow [the debtor's] brains out." Or, another case where the creditor appeared at the debtor's door in the evening demanding that he be paid or "your [sic] going to regret it." *Wingard*, 382 B.R. at 904-05; *see also, In re Lansaw*, 2015 WL 224093, at *9 (Bankr. W.D.Pa. Jan. 14, 2015).

*Wingard* holds that when stay violations are not obviously egregious, emotional distress claims must be proven through the introduction of corroborating extrinsic evidence beyond the self-serving testimony of the debtor. In *Wingard*, the court found that the plaintiffs had not met their burden of proof on the issue of emotional distress.

I cannot equate Coast's actions here to verbal threats of violence against a debtor. Nor can I conclude that the acts were so flagrant that they would necessarily inflict emotional distress upon Aleckna. Further, Aleckna's own testimony belies her damage claim for emotional distress.

Aleckna was asked upon direct whether she had thought about the Coast transcripts every day for the three years prior to trial. She answered, "[n]ot every day . . . I think about it often, but not - - not every day. It doesn't consume my life." Trial Tr. 145.

No corroborating evidence was presented that Aleckna has suffered any ailments, or required any medical treatment, due to Coast's violations of the automatic stay. Corroborating evidence might have been presented by medical experts, or lay witnesses, such as friends or co-workers, who could have testified to manifestations of mental anguish. *Wingard*, 382 B.R. at 905, n. 14.

The request for emotional distress damages will be denied.

### G. Claim for Punitive Damages

The counterclaim also seeks the award of punitive damages.

Punitive damages are generally awarded in response to particularly egregious conduct in order to serve punitive and deterrent purposes. *In re Wagner*, 74 B.R. 898, 903-04 (Bankr. E.D.Pa. 1987) (internal citations omitted).

My colleague, Judge France, has enumerated four factors to consider on punitive damages: (1) the defendants' conduct; (2) their motives; (3) any provocation by the debtor; and, (4) each individual defendant's ability to pay. *In re Frankel*, 391 B.R. 266, 275 (Bankr. M.D.Pa. 2008).

The Court is disappointed by Coast's actions. However, the act of withholding a graduation transcript has been countenanced by a minority of reviewing courts. Also, no evidence was introduced showing that Coast has taken similar actions against other student debtors who have filed for bankruptcy. *Compare In re Iskric*, 496 B.R. 355, 365-66 (Bankr. M.D.Pa. 2013). My judgment will require delivery of graduation transcripts and a diploma to Aleckna within a given time period. I find that this also lessens the need for an award of punitive damages.

I find that consideration of the *Frankel* factors weighs against the award of punitive damages.

The claim for punitive damages will be denied.

IV. **Conclusion**

Judgment will be entered on the counterclaim in favor of Aleckna and against Coast. Aleckna will be awarded actual damages in the amount of $230.16. The claim for emotional distress damages will be denied. The claim for punitive damages will be denied as well. Coast must, within twenty-one days, deliver three certified transcripts, with a graduation date and a diploma, to Aleckna. Aleckna will be allowed fourteen days from the date of the judgment to file an itemized request for attorneys' fees and costs incurred in seeking to obtain graduation transcripts and for legal representation in this adversary proceeding.

By the Court,

*[signature]*

Date: January 14, 2016

Robert N. Opel, II, Bankruptcy Judge

(BI)