UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>Steven Richard Aleckna<br>Jaime Sue Aleckna,<br><br>        Debtors. | CHAPTER 13<br><br>CASE NO. 5:12-bk-03367-RNO |
| California Coast University,<br><br>        Plaintiff and<br>        Counterclaim Defendant,<br>   v.<br><br>Jaime Sue Aleckna,<br><br>        Defendant and<br>        Counterclaim Plaintiff. | Adversary Proceeding<br><br>No. 5:12-ap-00247-MJC |

**ALECKNA'S BRIEF IN SUPPORT OF HER
PETITION FOR AN AWARD OF ATTORNEY'S FEES**

      I.      INTRODUCTION AND PROCEDURAL HISTORY[1]

When Aleckna[2] filed her bankruptcy petition, she was behind on her tuition payments to Coast. This tuition debt was listed on her schedules as "disputed," and the bankruptcy clerk caused notice of the bankruptcy case to be served on Coast by mail. (Docket 12-bk-00367, Docs. 1, 9.) Aleckna thereafter called Coast to request a copy of her transcript. (Doc 148, p. 129.) She was told by Coast's registrar that she could not obtain her transcripts because her account was on a financial hold. (Doc 148, p. 129.) Aleckna then contacted her lawyer, who told her to send a letter requesting her transcripts. (Doc 148, p.

---

[1] As the currently assigned jurist was not involved during the pre-appellate proceedings, some liberty is being taken in that this procedural history section is unusually detailed so as to help the Court become familiarized with the history. The extent of the pre-trial proceedings is relevant to provide context for the size of the fee request.
[2] This brief will generally refer to the parties by their names rather than by the cumbersome titles Counterclaim Plaintiff and Counterclaim Defendant.

130.) Aleckna mailed this letter, and Coast responded to her with an email which did not provide Aleckna with her transcripts, and instead asked Aleckna to produce a copy of a bankruptcy discharge which had not yet been entered. (Doc 148, pp. 130 - 131.) Aleckna again contacted her lawyer, who sent an email to Coast explaining that he viewed Coast's failure to release the transcripts as a violation of the automatic stay, and also attaching a copy of some bankruptcy paperwork, although it was different than the items that Coast had requested. (Doc. 148, pp 131; 141, Doc. 116-4, p. 2.) Coast thereafter sent Aleckna her transcripts. (Doc. 148, p. 141.) However, the transcripts indicated that she had not graduated. (Doc. 148, p. 141.) Aleckna called Coast to inquire about the missing graduation date, and she was told that she could not graduate because she still owed tuition. (Doc. 148, p. 142, Doc. 116-5, p. 2.)

Coast then initiated this adversary by filing an action to declare Aleckna's tuition obligation to be non-dischargeable. (Doc. 1.) Aleckna answered that complaint, and also filed a counterclaim seeking recourse for Coast's violation of the automatic stay. (Doc. 3.) The parties engaged in settlement discussions. Aleckna, believing that the parties had reached a settlement, filed a motion to enforce it, which was ultimately denied. (Docs. 10, 61.)

Coast filed a motion to dismiss Aleckna's counterclaim. (Doc. 5.) Before that motion was decided, Coast filed an amended complaint. (Doc. 31.) A few weeks later, it followed that up with a motion and proposed order to dismiss its **own lawsuit with prejudice**.[3]

---

[3] Normally, a defendant would not object to a plaintiff's request to dismiss its own case with prejudice. However, here Coast was attempting to foreclose Aleckna's ability to replead her counterclaim in response to Coast's amended complaint. (See Doc. 39 ¶ 17)("the Plaintiff is seeking closure of litigation between the parties and requests that the Court determine that above adversary proceeding is rendered dismissed/closed.")

2

(Docs. 39, 39-2.) Coast argued that it was permitted to dismiss under Rule 41(a)(1)(A)(i) because Aleckna had not yet answered the amended complaint. The bankruptcy court denied this motion. (Doc. 44.) Coast then filed a second motion to dismiss Aleckna's counterclaim (Doc. 64.) which the bankruptcy court also denied. (Doc. 72.) *In re Aleckna*, 494 B.R. 647 (Bankr. M.D. Pa. 2013). The parties thereafter engaged in discovery. However, when Aleckna sought to obtain discovery from Coast regarding its non-dischargeability action, Coast offered to withdraw its claim with prejudice. (Doc. 76.) Aleckna agreed, and the bankruptcy court entered an order dismissing Coast's claim with prejudice.[4] (Doc. 77.)

Coast then filed a motion for summary judgment. (Doc. 83.) Aleckna responded to this motion, and discussed, *inter alia*, how Coast's refusal to award her with a degree violated the automatic stay. (Doc. 96, pp. 6 – 7.) Coast's reply brief indicated for the first time that Coast did not believe that Aleckna's counterclaim asserted that the failure to award a degree violated the automatic stay. (Doc. 97, pp. 7 – 9.) Out of an abundance of caution, Aleckna then filed a motion to amend her counterclaim to more specifically describe the ways that Coast had violated the stay, including allegations that Coast had refused to award her with a degree. (Doc. 99.) The bankruptcy court granted this motion over Coast's opposition. (Docs. 101, 108.)[5]

Coast then filed a second motion for summary judgment (Doc. 111), which the bankruptcy court denied (Doc. 121). After multiple continuances at Coast's request, the

---

[4] The Third Circuit observed that this dismissal "was essentially a concession that Aleckna's debt was dischargeable under the Bankruptcy Code and would be extinguished upon termination of the proceedings." *In re Aleckna*, 13 F.4th 337, 340 (3d Cir. 2021).

[5] When Coast again tried to attack the amendment at trial, the bankruptcy court held that "it's law of the case already that the amendment was permissible." (Doc. 148, p. 171.) Coast's later appeals to the district court and circuit court did not include this issue.

trial was held on October 9, 2015. (Docs. 122, 135, 139, 144.) Both parties filed pre-trial and post-trial briefs. (Docs. 145, 146, 149, 150, 151.) Shortly thereafter, the court entered judgment in Aleckna's favor, and awarded her the following relief (Doc. 153):

- three copies of her certified transcript that contained her graduation date;
- a diploma;
- the pre-litigation attorney's fees that she incurred for time spent attempting to obtain her transcripts;
- a reasonable amount of attorney's fees and costs that she incurred pursuing this adversary proceeding; and
- $230.16 for time missed from work to attend the trial.

Aleckna thereafter filed an itemized fee statement, and Coast appealed the underlying judgment. (Docs. 154, 155.) The bankruptcy court then entered an order staying all proceedings (including the then-pending fee application) until a final judgment was entered on the appeal, and further ordering that a status conference would be scheduled after entry of that final appellate judgment. (Doc. 178.)

The district court affirmed, (Doc. 194) and also denied Coast's motion for reconsideration. (District Court Docket No. 3:16-cv-00158-RDM, Doc. 35.) Coast then appealed to the circuit, which also affirmed. (Doc. 196.) In accordance with its earlier order, this Court then scheduled a status conference for June of 2023 (Doc. 198), and after that conference was held entered a scheduling order for Aleckna's fee application. (Doc. 204.) The fee application and this supporting brief are being filed as required by that order.

4

Case 5:12-ap-00247-MJC   Doc 211   Filed 09/15/23   Entered 09/15/23 17:28:44   Desc
Main Document    Page 4 of 12

## II. QUESTION PRESENTED

Does Aleckna's petition fairly assess the reasonable amount of attorney's fees to award?

**Suggested Answer:** Yes.

## III. ARGUMENT

"[A]n individual injured by any willful violation of a stay provided by this section shall recover . . . costs and attorneys' fees, . . . " 11 U.S.C. § 362k(1). Aleckna's request for fees and costs should be awarded in full.

Congress provided for fee-shifting in consumer protection statutes to enhance their enforcement. *Student Pub. Interest Research Grp. of New Jersey, Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1449 (3d Cir. 1988). This component of these statutes helps deter illegal behavior since potential defendants know that counsel with skills and rates similar to their own lawyers' may sue for the unlawful conduct. *Id.* at 1550. "[A]ttorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991)(construing the Fair Debt Collections Practices Act).

Additionally, the fee should not be reduced to achieve a result that is proportional to the underlying recovery. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011)(emphasis in original). The *Millea* court explained that this policy is especially important for claims where a small financial recovery is expected. *Id.* The

5

availability of a lodestar fee, without regard to considerations of proportionality, assures that "claims of modest cash value can attract competent counsel." *Id.*

*Millea* has been followed in this district. In *Romeo v. Simm Assocs., Inc.*, 170 F. Supp. 3d 750 (M.D. Pa. 2016), Judge Richard Conaboy cited to *Millea* in awarding $19,121.05 in fees and costs on a case where the underlying recovery for the plaintiff was $1,001.00.[6] "That the fees sought here are disproportionate to the amount of the client's recovery is of no relevance." *Romeo,* 170 F. Supp. 3d at 753.

The rule against proportionality is even more important where, as here, a defendant rebuffs early efforts to settle, and then litigates strongly.

> The borrower's counsel did not inflate this small case into a large one; its protraction resulted from the stalwart defense. And although Defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

*McGowan v. King*, 661 F.2d 48, 51 (5th Cir. 1981).

"While [defendant] is entitled to contest vigorously [plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." *Henson v. Columbus Bank & Trust Co.* (11th Cir. 1985), 770 F. 2d 1566, 1575. A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera,* 477 U.S. 561 at n.11 (U.S. 1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc)).

---

[6] The fees in the instant matter are much larger than they were in *Simms* because liability in *Simms* was resolved almost immediately. There, plaintiff accepted an offer of judgment that was tendered only 32 days after the removal of the action from state court.

6

Case 5:12-ap-00247-MJC    Doc 211    Filed 09/15/23    Entered 09/15/23 17:28:44    Desc
Main Document    Page 6 of 12

Coast's litigation conduct has been *more* than tenacious. Coast, **not Aleckna**, started this adversary case. Three days later, Aleckna counter-claimed. And just five days after that, Aleckna reached a reasonable settlement with Coast's then-attorney, Kirk Moon. Thus, Aleckna and her counsel tried to resolve at the very beginning – before substantial attorney's fees accrued.

Coast changed its mind about settlement, fired Moon, and brought in new counsel. Since then, Coast has litigated the case with substantial vigor, pursuing questionable positions with relatively predictable results. The following chart summarizes some of Coast's filings:

| Filing Description | Docket number | Result |
|---|---|---|
| Complaint | 1 | Superseded by Coast's amended complaint. [31] |
| Motion to Dismiss Aleckna's Counterclaim | 5 | Dismissed as moot by Coast's filing of an amended complaint. [36] |
| Motion to Strike | 9 | Dismissed as moot by Coast's filing of an amended complaint. [36] |
| Amended Complaint | 31 | Eventually withdrawn by Coast with prejudice. [76, 77] |
| Motion to Dismiss *its own* Complaint (and to close the *entire* adversary) | 39, 39-2 | Denied. [44] |
| Motion to Dismiss Counterclaim *and for sanctions against Aleckna's counsel* | 64 | Denied. [71] |
| Motion for Summary Judgment | 111 | Denied. [120] |
| Appeal to District Court | | Denied. |
| Motion for Reconsideration | | Denied. |
| Appeal to Circuit Court | | Denied. |

Coast hasn't confined its arguments to simply trying to win the case. Instead, it also sought sanctions against Aleckna's counsel for pursing the (ultimately meritorious) counterclaim. (Doc. 64.) When a party seeks sanctions against counsel, it should not be surprised if that attorney then spends substantial time putting forth the best case possible to ensure that the sanctions request is denied.[7]

Coast's hardball stance here is all the more surprising because, from the inception, Coast's position wasn't supported by the facts **or** the law. After hearing testimony from Coast's witnesses, Judge Opel found that "[t]here is no real contest that Coast did not promptly release any transcripts to Aleckna after she advised them by telephone of her bankruptcy filing." *In re Aleckna*, 543 B.R. 717, 721 (Bankr. M.D. Pa. 2016), *aff'd and remanded sub nom. California Coast Univ. v. Aleckna*, 2019 WL 4072405 (M.D. Pa. Aug. 28, 2019), *aff'd sub nom. In re Aleckna*, 13 F.4th 337 (3d Cir. 2021). And the settled law was that this type of refusal violates the stay. During the appeal, the Third Circuit opined that "[t]he two outlier cases on which [Coast] relies do not create a split of authority to render the law unsettled." *Aleckna,* 13 F. 4th at 346 – 347.

Presumably, Coast's attorneys were not working on a contingent basis, and they received payment for all of this dubious work. Coast has implied that it has charged its client more than the fees claimed by Aleckna's counsel, by promising that "it would not argue that its attorney's fees or time were less than that of Aleckna's counsel." (Doc 207.)

---

[7] In denying the request for sanctions, Judge Opel chastised Coast's counsel: "It is important that counsel discharge his or her duties, both to the client and the court, in a professional manner. . . .sanctions should not be sought as a litigation tactic - . . ." *Id.* Arguably, Coast's completely baseless request for sanctions was *itself* sanctionable. However, Aleckna's counsel did not further multiply the proceedings by requesting them.

8

Yet, after forcing Aleckna's counsel to spend the time to respond to all of these filings, Coast now claims that Aleckna's counsel is the one that is "churning fees."

**Calculation of the fee**

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, . . . ." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). In determining a fee application the Court must calculate the lodestar, which is a reasonable hourly rate multiplied by the number of reasonable hours spent working on the case. *See Interfaith Community Organization v. Honeywell*, 426 F.3d 694, 703 n.5 (3d Cir. 2005).

1. *The Reasonableness of the Hourly Rates*

The hourly rates charged by Aleckna's counsel are reasonable and consistent with the prevailing rates in the market. Support for these rates is detailed in the Affidavit of Carlo Sabatini at ¶¶ 16-50 (attached as [Exhibit A](Exhibit A)). Part of that support, and attached to the Sabatini Affidavit, is the affidavits of six other local attorneys that all support the requested hourly rates, both by comparing the requested rates to their own rates, and also by confirming that the requested rates are in conformity with the rates charged for similar services in this geographic area by other attorneys with commensurate experience.

The rates are also consistent with the fee schedule established by Community Legal Services, Inc. ("CLS Fee Schedule"). The CLS Fee Schedule "'has been approvingly cited by the Third Circuit as being well developed and has been found . . . to be a fair reflection of the prevailing market rates. . .'" *Stockport Mountain Corp., LLC v. Norcross Wildlife Found., Inc.*, 2014 WL 131604 (M.D. Pa. Jan. 13, 2014)(**Munley, J.**)(quotations and ellipses in original, citations omitted). Other judges in the district have also relied on the fee schedule

to set reasonable forum rates. *See LightStyles, Ltd. ex rel. Haller v. Marvin Lumber & Cedar Co.*, 2015 WL 4078826, at *4 (M.D. Pa. July 6, 2015)(**Caldwell, J.**)(party "can show that its hourly rates are reasonable by relying on the [CLS] fee schedule."); *Paulus ex rel. P.F.V. v. Cordero*, 3:12-CV-986, 2013 WL 432769 (M.D. Pa. Feb. 1, 2013)(**Caputo, J.**)("the Court approves of the rates established by CLS as reasonable market rates to be used in fixing the hourly rates in this case."); *Benjamin v. Dep't of Pub. Welfare of Com. of Pennsylvania*, 2014 WL 4793736, at *8 (M.D. Pa. Sept. 25, 2014)(**Jones, J.**)(approving rates that were "in step with those prescribed as reasonable under the Community Legal Services fee schedule, . . ."); *Brown v. TrueBlue, Inc.*, 2013 WL 5947499 (M.D. Pa. Nov. 5, 2013)(**Kane, J.**)(approving rates that exceeded by a small amount the rates recommended in the CLS Schedule); *Crevatas v. Smith Mgmt. & Consulting, LLC*, 2017 WL 1078174, at *5 (M.D. Pa. Mar. 22, 2017)(**Mannion, J.**)(approving requested attorney's fees calculated "using the hourly rates described in the [CLS] fee schedule."); *Shiptoski v. SMG Grp., LLC*, 2020 WL 13657460, at *2 (M.D. Pa. Jan. 16, 2020)(**Mariani, J.**)(awarding fees in a class action case after determining the requested fees were slightly less than a lodestar calculated using the CLS fee schedule.); *Ojo v. Brew Vino, LLC*, 2021 WL 4149187, at *2 (M.D. Pa. Sept. 13, 2021)(**Rambo, J.**)("CLS fee schedule is commonly used in this district as a benchmark for fees, . . ."); and *Pennsylvania State Univ. v. Parshall*, 2021 WL 9059316, at *2 (M.D. Pa. Apr. 29, 2021)(**Wilson, J.**)(using the CLS rates is appropriate).

      The CLS Fee Schedule states that it "do[es] not reflect any adjustment for contingency . . . ." This factor is particularly important in a case of this nature, as it is unlikely that bankruptcy debtors would be able to afford counsel for a case such as this on anything other than a contingent basis. Thus, if a plaintiff does not prevail, her attorney will

not receive any fee for the work that he has done. This is a vastly different situation than one where an attorney simply bills his client hourly, as the lawyer is the one assuming the risk. *See generally Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998)("Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would."); *see also City of Burlington v. Dague*, 505 U.S. 557 (1992)(The difficulty of establishing the merits of a contingent case is "ordinarily reflected in the lodestar-either in the higher number of hours expended to overcome the difficulty, **or in the higher hourly rate of the attorney skilled and experienced enough to do so**.")(emphasis added)(dicta). As Aleckna's counsel handled this matter on a contingent basis, this risk could support a rate that is even higher than the rates presented in the CLS Fee Schedule.

The CLS Fee Schedule provides rates of $420 to $525 for attorneys with eleven to fifteen years of experience, of $535 to $625 for attorneys with sixteen to twenty years of experience, and of $630 to $715 for attorneys with twenty one to twenty five years of experience. *See* http://clsphila.org/about-cls/attorney-fees (attached as Exhibit B). Paralegal rates range from $190.00 to $285.00. *Id.*

All of the rates sought in this proceeding for all of the professionals fall *below* the CLS schedule range for corresponding experience. The requested rates are reasonable.

2. *The Reasonableness of the Hours Spent*

The hours spent are fair and reasonable and were necessarily incurred in the prosecution of this action. Substantial billing discretion has been applied. (Sabatini Aff. ¶ 50.) After applying billing judgment, an **additional** 10% discount was applied in an effort

11

to compromise disputes where reasonable minds may differ. (Sabatini Aff. ¶ 50.) The time spent is reasonable.

## IV. CONCLUSION

The fees incurred in this matter were reasonably necessary in prosecuting this action. Aleckna has had a high degree of success and is entitled to a complete recovery. Aleckna has exercised reasonable billing judgment, has discounted over 170 hours of time, and has further reduced the bill by an additional ten percent to attempt to avoid any dispute over the final bill. Thus, Aleckna respectfully submits that the entire amount requested should be awarded.

s/ Carlo Sabatini
Carlo Sabatini, Bar ID PA 83831
Attorney for Aleckna
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email: carlo@bankruptcypa.com
